Stephen Luther EVANS, Appellant,

v.

**Dr. P. J. CICCONE, Warden, U. S. Medical Center, Springfield, Missouri, Appellee.**

**No. 18670.**

United States Court of Appeals
Eighth Circuit.

May 23, 1967.

Stephen Luther Evans, pro se.

F. Russell Millin, U. S. Atty., and Bruce C. Houdek, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

LAY, Circuit Judge.

Stephen Luther Evans has appealed from an order of the district court deny-

---

ing relief for a writ of habeas corpus. Appellant sought relief from the District Court for the Western Division of the Western District of Missouri by reason of alleged discrimination arising out of religious and racial persecution while confined in the United States Medical Center, Springfield, Missouri. Appellant relies upon the Civil Rights Act of 1964, Tit. 42, U.S.C. § 1983 and Tit. 18, U.S.C. §§ 241–242.

Appellant was sentenced in February 1965 to a term of 18 years in the custody of the Attorney General for bank robbery. On March 3, he was transferred from the United States Penitentiary at Lewisburg, Pennsylvania, to Springfield, Missouri, for surgical treatment. At the present time he is still under medical care. The district court was informed that as soon as further medical treatment becomes unnecessary Evans will be transferred from the Center.

Appellant states that he is a member of the Islamic religion. He states he has been harassed and persecuted by the officials of the prison solely because of his Negro race and religion. The district court, Honorable Judge Elmo B. Hunter, ordered a hearing on October 12, 1966.[1] Appellant was represented by counsel. Ten witnesses were called by appellant as to charges of discrimination within the confines of the prison. The court ordered the issuance of a writ of habeas corpus ad testificandum for witnesses from Leavenworth, Kansas, Washington, D. C., Michigan, Seagoville, Texas, and Marion, Illinois. All testified without expense to appellant.

Appellant's main contentions as set forth in his petition concern his periodic confinement in Ward 10–B, which he refers to as "solitary" or the "hole." Appellee relates a series of instances whereby Evans disobeyed orders and was placed in 10–B custody.[2] Appellee denies that such confinement was based upon discrimination or religious persecution. Evans on one or more occasions admittedly has chosen to go to Ward 10–B rather than perform his assigned duties.

It would serve little purpose to set forth the factual details concerning the various charges and countercharges of the respective parties. It is not alleged that appellant is in Ward 10–B confinement at the present time. The learned District Judge fairly heard all of the evidence and found nothing unfair or discriminatory had taken place. Under the status of the record we have no cause to disturb his finding.

The record speaks affirmatively against appellant's charges. The Prot-

1. The court asked the parties to present evidence on the following questions:

"(1) Are security officers or other Medical Center personnel harassing, intimidating or otherwise discriminating against petitioner because of his race or relgion (Orthodox Religion of Islam)?

"(2) Have security officers or other Medical Center personnel in the past harassed, intimidated, or otherwise discriminated against petitioner because of his race or religion?

"(3) Have personnel of the Medical Center conspired or are they now conspiring to discriminate against petitioner or to deprive petitioner of any of his Constitutional rights?

"(4) Has the administration of the Medical Center in the past refused to permit, or is it now refusing to permit, petitioner to write to his family advising them that he is being discriminated against because of his race or religion?

"(5) Has petitioner been wrongfully accused of creating racial tension and advocating racial supremacy?

"(6) Has petitioner been placed in restricted segregation on prior occasions because of his religion or race?

"(7) Immediately prior to his release for this hearing was petitioner confined in restricted segregation because of his religion or race?

"(8) Have petitioner's legal papers been taken from him because he assisted another inmate in preparing a petition?

"(9) Have those legal papers been returned to petitioner?

"(10) The Court will also decide any other issues relevant to the pleadings herein which petitioner wishes to raise."

2. Ward 10–B is a separate unit comprising individual rooms removed from the general population of the prison.

estant Chaplain testified that members of the Islamic faith are provided with Korans and free religious literature. Arrangements exist for a minister to conduct services at the prison and correspondence to Eljah Mohammad is allowed. The meetings are required to be held at reasonable times in the Protestant chapel.

Appellant aims his charges, however, at alleged discrimination against practicing or discussing his religion at other areas of the prison. He alleges an April 1966 confinement arose from his teaching Islam in the ward. A June 1966 disturbance took place in the lavatory at 10:20 p. m. Appellee disagrees as to the reason for these commitments. He states that the April incident involved "unrest" Evans created with others in the ward. Other prisoners had complained of appellant's bothering them when they preferred to be let alone. Admittedly, the June incident involved a direct disobedience of an order to return to his bed when he and another prisoner were disturbing others in the ward.

Appellant assumes that practice of his newly acquired faith permits violation of prison discipline. Such assumption is basically incorrect. Sostre v. McGinnes, 2 Cir., 334 F.2d 906. See also, Barkin, The Emergence of Correctional Law and the Awareness of the Rights of the Convicted, 45 Neb.L.Rev. 669, at 682–84. Freedom of religion is recognized as within the proper exercise of a federal constitutional right for prisoners. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030; 20 Rutgers L.Rev. 538 (1966). However, involved is the familiar problem of alleged personal freedoms clashing with powers that govern. Freedom of religion can never mean freedom to interfere with the peaceful rights of others, or freedom to flagrantly disregard reasonable rules of conduct in or out of prison. Cf. Desmond v. Blackwell, M.D.Pa.1964, 235 F. Supp. 246. As early as 1878 Chief Justice Waite said if "professed doctrines of religious belief [are made] superior to the law of the land [it would] in effect

* * * permit every citizen to become a law unto himself. Government could exist only in name under such circumstances." Reynolds v. United States, 98 U.S. 145, 166–167, 25 L.Ed. 244.

Judgment affirmed.