**UNITED STATES of America, ex rel.
Milo Warfield GOINGS, Petitioner,**

v.

**R. L. AARON, Warden, F. C. I. Sand-
stone, Minnesota, Respondent.**

**No. 5-72 Civ. 80.**

United States District Court,
D. Minnesota,
Fifth Division.

Oct. 2, 1972.

Legal Aid Clinic by Melvin B. Goldberg, Minneapolis, Minn., for petitioner.

Robert G. Renner, U. S. Atty. by Stephen G. Palmer, Asst. U. S. Atty., for respondent.

NEVILLE, District Judge.

Petitioner, an Oglala Sioux Indian prisoner at the Federal Correctional Institution at Sandstone, Minnesota, presented a petition for a writ of habeas corpus on which the court held a trial and evidentiary hearing at Minneapolis, Minnesota on September 22, 1972. Petitioner originally is from the Pine Ridge Indian Reservation in South Dakota. He was sentenced by the United States District Court in that State in July 1969 to a five-year prison term apparently for breaking and entering. On January 4th and 5th, 1972, petitioner was granted a furlough to leave the Correctional Institution to attend his father's funeral. Before his departure he promised that in return for such privilege he would obtain a haircut prior to or upon his return so as to bring its length in compliance with prison regulations. He testified that on his father's grave he made a "Ceremonial Indian Vow" that he would return to the Old Indian Tradition and religion, a part of which includes not cutting his hair. On return to the Institution, however, he kept his prior promise and submitted to a conforming haircut. There is a dispute in the evidence as to whether in June of 1972 defendant had another haircut. That question need not be resolved in the view this court takes of the case because in any event by August petitioner's hair was below his collar at the back of the neck in violation of the regulations.[1] Despite suggestions and requests, he refused to have his hair cut as a result of which on or about August 28th he was confined to the isolation area of the Sandstone Institution after being told

[1]. "1. POLICY. It is the policy of this institution to establish standards relative to inmates' haircuts, mustaches and sideburns which are relatively compatible with hair styles popular in contemporary society. Beards of any style will not be permitted. Attached are sketches which illustrate permissible hair styles, mustaches and sideburns.

3. IMPLEMENTATION.

a. Sideburns must not extend below an imaginary line from the tip of the nose to the base of the ear lobe. Sideburns must be neatly trimmed and may not be flared at the bottom.

b. Mustaches will be permitted. However, they must be neatly trimmed and may not extend below the upper lip or extend beyond the corners of the mouth.

c. Haircuts must be in accordance with the following guidelines:
Hair must not extend over the ears on the sides, over the collar in the back, or over the eyebrows in the front.

d. Afro-style haircuts are permitted for the Black inmates. Shape of the Afro hair style must be maintained within limits pictured and described on the attached drawings. Large bushy, basket shaped styles are not permitted."

that he was in violation of the haircut regulations. Petitioner has no mustache, sideburns or beard, but his hair at time of his confinement extended below his collar line and at time of trial was an inch or more below the collar line. Petitioner testified that he has spent virtually all of the last ten years in prison for various offenses and that of his present sentence (given all good time credit) he had as at date of trial but 55 days remaining. He is 27 years of age and apparently was transferred to Sandstone from Leavenworth Prison in Kansas.

He testified that, of a dozen or more persons of the Indian race in the institution at Sandstone, he was the only one wearing his hair below collar level. He also confirmed that the Indian inmates met together with some regularity in the prison to practice Indian culture and to engage in religious services. In fact, the Warden and deputies were invited to attend on one or more occasions.

Petitioner stated he had but a few years of schooling, that he cannot speak the language of his tribe and that up to January 1972 he had not followed nor attempted to follow traditional Indian ways. He has had no previous religious inclination to grow, and therefore no problem with, long hair but now believes that if his vow is kept it will help keep him out of prison in the future. He believes that at some future date which he cannot predict, he will have a vision if he conducts himself according to his religious precepts and has kept his vow regarding long hair. He also believes that the Holy Men will interpret his dream which will or may tell him when and how to cut his hair in a certain way. The Holy Men in his religion are analogous to ministers in other religions. He avers that the vow is very solemn and that he intends to abide by it even though it makes a difference in the time that he will be required to spend in prison.

The discipline imposed as a result of violation of the haircut regulations has had some consequences which undoubtedly are detrimental to petitioner, namely, he lost earnings at the rate of some $50.00 a month while not working in the prison factory and has lost or will lose credit for good time served.

Petitioner produced two witnesses. One was Mr. Ed McGaa, an Oglala Sioux, highly educated and articulate, born on the Pine Ridge Reservation, now a graduate of South Dakota law school and a former jet pilot in the Armed Forces. He testified that annually he returns to the Reservation at the time of the Sun dance and participates in it, including the ceremony of piercing. The thrust of his testimony was that though he himself did not wear his hair long and had complied with hair regulations when in the Armed Forces, a vow of the type that petitioner had taken relative to letting his hair grow long was certain to be important to petitioner, particularly in view of the Indian teachings that to break a vow of this sort would make him fearful that great misfortune would be nearly certain to follow. Rabbi Louis Milgrom also was called as a witness and testified that for the last 26 years he has been a chaplain at the University of Minnesota and that he had studied the Jewish Religion in which long hair was a tradition, in support of which he cited a number of quotations from the Old Testament. He testified that if one took a vow not to cut his hair, but then broke it, he could renew his vow and that such would in effect amount to a reinstatement.

Warden Aaron appeared on behalf of the government and testified to the hairstyle regulations and the need therefor, reviewing the reasons and statements made in Blake v. Pryse, 315 F. Supp. 625 (D.Minn.1970), aff'd 444 F.2d 218 (8th Cir. 1971), as to identification, hygiene and security. He stated that the regulations made a separate provision for members of the black race in that they are allowed to have a modified or limited Afro hairstyle and that the regulations as they now exist had been submitted to the Bureau of Prisons at Washington and had been accepted and

approved. He stated that he treated the meetings of Indians in the Institution as religious in character. At those meetings there is drum music and dancing and the occasional presence of a Professor from the University of Minnesota at Duluth who lectures on education and Indian culture; further, on Saturdays and weekends Indians are released to collect stones and other items on the prison grounds for the making of souvenirs and curios. In his opinion the Indian inmates are not unhappy and there is no other Indian complaint. He has served in eight institutions, all of which have hair regulations and none of which are special for Indians.

It seems to the court that the starting point for this decision is Blake v. Pryse, *supra*. Therein it was held that the prison hair regulations were valid and reasonably supported by the requirements of identification, hygiene and security. That decision was affirmed on appeal and therefore, it seems to the court that an attack on the validity or reasonableness of the prison hair regulations is without merit. Petitioner's counsel spent time attempting to show that these regulations were not reasonable or necessary as applied to petitioner and did not accomplish any objective. It is obvious that the regulations apply to different persons in different ways depending on the amount and position of hair grown. So, one question is, should the regulation not apply to one who has a limp or a big identifying scar and who washes his hair every night because as to him the purposes of identification and hygiene are needless? If the situation of each prisoner is to be personally examined as to whether the regulation should be applied to him because in his circumstances there is no particular need of what in general is a provident policy, then the regulations have no vitality or effect and might as well not exist. As stated the court regards that issue as foreclosed to the petitioner by Blake v. Pryse, *supra*.

Petitioner's most forceful and perhaps original argument is that this is a religious matter and that the regulations were not attacked in Blake v. Pryse on the basis of infringement of First Amendment Rights to freedom of religion or religious expression. This court of course is aware and cognizant of the rights guaranteed by the First Amendment to the Constitution for religious freedom and its expression despite being behind the prison walls. See Cooper v. Pate, 382 F.2d 518 (7th Cir. 1967), cited with approval in Evans v. Ciccone, 377 F.2d 4, 6 (8th Cir. 1967). The question becomes whether the valid regulations should apply except as to those who on religious grounds do not wish to abide them. A prime consideration in this case obviously is whether the petitioner is sincere in pressing his claim on the grounds of his religious beliefs insofar as regards long hair, and on this issue the court is constrained to find that there is substantial doubt and to hold against petitioner. According to his testimony, he had gone 26½ years of his life without following Indian customs, the last ten of which he has spent in confinement. No other Indians at the Institution are motivated by religious customs the way he claims to be. He has but 55 days of his sentence remaining at which time he will be free of the prison walls and may pursue religion in any lawful way he wishes and may grow his hair in any way he thinks is appropriate. He took the vow on his father's grave, having in mind that a vision would come to him at an indefinite future time. The court sees no reason why he cannot make a similar vow 55 days from now when he is released. As Rabbi Milgrom indicated, the vow would then begin anew and if he kept it nothing fearful would happen to him. Further, he did submit to the cutting of his hair after his furlough. The court respects him for that action because he gave a promise and he kept it which is commendable. Nevertheless, the court cannot believe that in such short period of time the petitioner has become so de-

voutly religious in his own tribal ways that he cannot forego growing his hair to the desired length for another brief period.

█ Assuming *arguendo,* however, that petitioner is devout and sincere and has no frivolous purpose, he still is not entitled to the relief he seeks. This court believes that for purposes of this case it is a matter merely of semantics whether it is said that the regulations requiring haircuts do "not deprive him of any federal civil or constitutional right" as stated in Blake v. Pryse, 444 F.2d 218, 219 (8th Cir. 1971) (where however religious grounds were not asserted) or whether it be considered contrariwise and that the refusal to get a haircut even though in claimed exercise of religious freedom is subject to reasonable rules of conduct so as to require such.

In Evans v. Ciccone, 377 F.2d 4, 6 (8th Cir. 1967), the court said:

"Appellant assumes that practice of his newly acquired faith permits violation of prison discipline. Such assumption is basically incorrect. Sostre v. McGinnis, 2 Cir., 334 F.2d 906. See also, Barkin, The Emergence of Correctional Law and the Awareness of the Rights of the Convicted, 45 Neb.L.Rev. 669, at 682–84. Freedom of religion is recognized as within the proper exercise of a federal constitutional right for prisoners. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030; 20 Rutgers L. Rev. 538 (1966). However, involved is the familiar problem of alleged personal freedoms clashing with powers that govern. Freedom of religion can never mean freedom to interfere with the peaceful rights of others, or freedom to flagrantly disregard reasonable rules of conduct in or out of prison. Cf. Desmond v. Blackwell, M.D. Pa.1964, 235 F.Supp. 246. As early as 1878 Chief Justice Waite said if 'professed doctrines of religious belief [are made] superior to the law of the land [it would] in effect * * *

permit every citizen to become a law unto himself. Government could exist only in name under such circumstances.' Reynolds v. United States, 98 U.S. 145, 166–167, 25 L.Ed. 244."

p. 521 where the court said:

"It is clear that prison authorities See Cooper v. Pate, supra 382 F.2d at must not punish a prisoner nor discriminate against him on account of his religious faith. But although a prisoner retains his complete freedom of religious belief, his conviction and sentence have subjected him to some curtailment of his freedom to exercise his beliefs."

See also Brown v. Wainwright, 419 F.2d 1376 (5th Cir. 1970), at p. 1377:

"Lawful incarceration brings with it the necessary withdrawal or limitations of many privileges and rights. Price v. Johnston, 334 U.S. 266, 86 S. Ct. 1049, 92 L.Ed. 1356 (1948); Jackson v. Godwin, 5 Cir., 1968, 400 F.2d 529; Walker v. Blackwell, 5 Cir., 1969, 417 F.2d 23."

A further challenge is made that the regulations permit Afro hairstyles for black prisoners and that mustaches are allowed for other inmates, constituting separate classifications under the general hair regulations which make no specific provisions for Indians. It is alleged that these categories violate the equal protection guarantee of the United States Constitution.

█ The court learned at the hearing, upon which facts both counsel seemed in agreement, that Indians do not and apparently cannot grow facial hair and that hair on blacks is of a different genetic type tending to grow tightly curled and will not grow as does the hair of the average caucasian or Indian. As to black prisoners, the regulations recognize this difference and so permit limited or modified Afro hairstyle, though "Large, bushy, basket-shaped styles are not permitted". In view of the inherent differences, the court does not believe that the regulations are in violation of equal protection

**6**

but holds that the classifications are reasonable. In any event, so far as the collar length regulation here involved, query whether petitioner has standing to challenge it since it applies equally to all prisoners and cannot be grounds of discrimination.

The consequences of a contrary decision than herein reached of course are that any prisoner who might claim a religious belief could claim exemption and the regulations might be rendered nugatory and pose an administrative disciplinary problem as to others. The court cannot believe that due process requires such a ruling.