Alan William **REINERT**, et al., **Plaintiffs,**

v.

Joseph **HAAS**, et al., **Defendants.**

Walter L. **WALKER**, et al., **Plaintiffs,**

v.

David **SCURR**, et al., **Defendants.**

**Civ. Nos. 83–313–D, 84–26–B.**

United States District Court, S.D. Iowa, C.D.

May 1, 1984.

478

Professor Barbara Schwartz, Prisoner Assistance Clinic, College of Law, Iowa City, Iowa, for plaintiffs.

Gordon E. Allen, Layne M. Lindebak, Mark Hunacek, Asst. Attys. Gen., State of Iowa, Des Moines, Iowa, for defendants.

## MEMORANDUM OPINION AND ORDER FOR PRELIMINARY INJUNCTION

VIETOR, District Judge.

Plaintiffs in these two 42 U.S.C. § 1983 [1] cases are inmates of the Iowa State Penitentiary (ISP) who practice Native American Religion. Most of them are Native Americans. Defendants are the former warden and present warden at ISP and other ISP officers and employees. The plaintiffs allege that the defendants, acting under color of state law, have prevented them from freely exercising their Native American religious preference, traditions and customs, and have discriminated against their religion, thereby violating the First and Fourteenth Amendments to the United States Constitution.

On March 30, 1984, a hearing was held on plaintiffs' request for a preliminary injunction. Only one of the many issues raised in the pleadings—the constitutionality of ISP's restrictions on the wearing of headbands by plaintiffs—was heard. Briefs were submitted later.

## FINDINGS OF FACT

At ISP there are several religious faiths found among the inmates—Christianity (Catholic and Protestant), Judaism, American Muslim, Moorish Science Temple, Church of the New Song and the Native American Religion. There are about ten to twelve Native American inmates at ISP, most or all of whom adhere to the Native American Religion. A few non-Indian in-

---

1. 42 U.S.C. § 1983 provides in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State[,] * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

mates are also interested in practicing the Native American Religion.

ISP policy allows wearing of religious apparel only in cells and at designated religious services. Religious apparel may not be worn in the yard or elsewhere. This policy applies to headbands, which are religious apparel in the Native American Religion.

Plaintiffs have either received or are subject to receipt of disciplinary reports for wearing headbands on the prison yard or at other places not designated. Headbands are also subject to confiscation when worn at impermissible locations, and some have been confiscated.

The nature of the Native American Religion and the significance in that religion of headbands was testified to by three Native American inmates and Kenneth Bordeaux. The testimony was not contradicted or disputed by defendants. Mr. Bordeaux is a Native American, a Teton Sioux, who has served for the past two and a half years as the Native American Religious Coordinator for the Nebraska Department of Corrections. He previously served for many years as Deputy Director of Indian Affairs for the state of Nebraska. Mr. Bordeaux has always followed the traditional Indian beliefs, and he is a Bearer of the Sacred Pipe, a spiritual leader. His spiritual name is Three Eagles. He is a learned expert in the field of Native American Religion.

Indian religion and Indian culture are one and the same. It is a way of life that is practiced constantly. Its essence, as a way of life, is living in harmony with all of one's surroundings. The circle is highly significant in Indian culture and religion, and this significance is expressed in the "cosmic circle," a visual representation of basic forces of life and the universe. The headband is a symbol of the cosmic circle; however, the headband is not just symbolic, it is sacred.

An adherent of the Native American Religion should always keep something sacred with him, such as a headband. There are other sacred objects that can be carried, such as a small cosmic circle (roughly similar in appearance to a four-spoked wheel). However, the choice of a sacred object is a highly individual matter, and the object chosen should be one with which the person is most comfortable. The need is commonly and traditionally filled by the headband. The three inmates who testified feel most comfortable with a headband and would not be comfortable with a cosmic circle because they feel that their knowledge of their religion is not thorough enough to grasp all the meanings of the cosmic circle. In brief, a headband serves an adherent of the Native American Religion much as a small cross or religious medal on a neck chain serves adherents of other faiths.

Inmates are permitted to wear at all times, subject to approval and inspection by defendant Ray, ISP's religious coordinator, a religious medal or medallion, such as a cross, hung from a chain around the neck.

The defendants' position on the headband issue arises from some unfortunate recent history at ISP. A serious riot occurred at ISP in September of 1981. One inmate was killed, hostages were taken and property damage exceeding a million dollars was suffered. A long lockdown and many changes followed. Among the changes was one relating to inmate clothing. Before the riot personal clothing was allowed, but since the riot only prison-issue clothing is allowed. The personal clothing policy that preceded the riot allowed prison gang members—bikers, Nazis, Vice-Lords—to dress in a manner that identified their gang affiliation. In some cases, such as the bikers, the mode of dress included a headband. Gang members, reinforced by their identifying dress, would intimidate other inmates and some staff members.

The post-riot policy change to prison-issue clothing aids security at ISP by de-identifying the prison gangs, which are non-religious groups of dubious character. Defendants contend that allowing the Native Americans to wear headbands will run counter to this policy. They also believe that if the Native Americans are allowed to wear headbands at all times other inmates will want the freedom to wear headbands

or their particular religious apparel at all times. Defendants do not contend that headbands would be used by the Native Americans to conceal contraband or for any other improper purpose.

Defendants are acting under color of state law.

## PRELIMINARY INJUNCTIVE RELIEF STANDARD

In the Eighth Circuit, "whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the plaintiff; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981).

## DISCUSSION

■ The First Amendment to the Constitution of the United States, which applies to the states through the due process clause of the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940), precludes the defendants from prohibiting plaintiffs from the free exercise of their religion. However, the *exercise* of religion (as distinguished from the freedom of religious belief) is not absolute, as this circuit's court of appeals recently observed:

> Freedom of religion is one of the federal constitutional rights of prisoners. *Evans v. Ciccone*, 377 F.2d 4, 6 (8th Cir. 1967). An "inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). The religious freedom to believe is absolute but the freedom to act or exercise one's religion is not absolute. *United States v. Ballard*, 322 U.S. 78, 86, 64 S.Ct. 882, 886, 88 L.Ed. 1148 (1944); *Sharp v. Sigler*, 408 F.2d 966, 970 (8th Cir.1969). Although prison authorities may regulate the exercise of religion for legiti-

mate institutional needs, those authorities may not unreasonably interfere with the inmate's exercise of his beliefs. *Proffitt v. Ciccone*, 506 F.2d 1020, 1021 (8th Cir.1974).

*Native American Council of Tribes v. Solem*, 691 F.2d 382, 384–85 (8th Cir.1982).

The Fourteenth Amendment also prohibits states from denying to any person the equal protection of the laws. In respect to prison discrimination against a religion, the *Solem* court observed:

> The denial of [a] privilege to adherents of one faith while granting it to others is discrimination on the basis of religion. *See Cooper v. Pate*, 382 F.2d 518, 522 (7th Cir.1967). Where one faith is more heavily restricted than another, the courts must closely scrutinize the reasonableness of any restriction. *Id.* at 521. * * * The state will have a heavy burden since "discrimination in treatment of adherents of different faiths [can] be justified, if at all, only by the clearest and most palpable proof that the discriminatory practice is a necessity." *Id.* at 522.

*Id.* at 384.

There is, of course, no question that the Native American Religion is a legitimate religion, nor is there any question that plaintiffs are sincere adherents of that religion. The sole questions are whether the defendants' restriction on wearing of headbands unreasonably interferes with plaintiffs' exercise of their religious beliefs and discriminates against their religion.

The record adequately demonstrates that the wearing of a headband is a legitimate and important part of Native American religious practice. While the headband is not an absolutely essential part of worship, as is the sacred pipe or Sweat Lodge, the role it plays for the individual is very important. It is his constant touch with his faith. The defendants themselves acknowledge the importance of wearing religious symbols by allowing inmates to wear crosses and other religious medals, a customary means

of a Catholic, for instance, to keep in constant touch with his faith.

The court finds no fault whatsoever in ISP's post-riot clothing policy and the effort to de-identify prison gangs. However, the court does not perceive that plaintiffs' wearing of headbands will undo what has been achieved in that regard. It is a spiritual use to which plaintiffs seek to put their headbands; they do not seek to intimidate others by wearing them. Also, as apparel a headband is just that—a headband—usually a bandanna tied around the head. It only slightly intrudes on ISP's post-riot clothing policy.

As for adherents of other faiths seeking to wear their religious apparel, each situation must be judged separately. Perhaps the religious apparel of another faith carries less sacred meaning than does the headband in the Native American Religion, and another faith's practice may not include the concept of wearing the apparel at all times. Also, the capacity of some religious apparel to be used to conceal contraband, a factor which defendants concede is not involved with headbands, would justify a ban on generally wearing such apparel. *Rogers v. Scurr,* 676 F.2d 1211, 1215–16 (8th Cir.1982).

The heavily dominant faith of staff and inmates at ISP is Christian. One can scarcely doubt that defendants would not ban wearing headbands if they were of religious significance in the Christian faith and the wearing of them by Christians served as an expression of their faith and as a spiritual comfort to them. (As previously noted, the wearing of Christian crosses and medals is allowed.)

## THE DATAPHASE FACTORS APPLIED

■ The court believes that plaintiffs will probably succeed on the merits in respect to the headband issue. Based on the record made at the preliminary injunction hearing, no compelling security interest is perceived that justifies the headband restriction as to adherents of the Native American Religion. The restriction appears to violate plaintiffs' right of free exercise of religion and appears to discriminate against their religion.

■ The threat of harm to plaintiffs is irreparable. Their religious exercise rights are infringed each day that they are prohibited from wearing headbands. This harm is not offset by any injury that granting the injunction will inflict on defendants. The injunction may require defendants to do some explaining to some other inmates, but it is not likely to frustrate any of the basic policies of ISP, or in any way impair security at the institution.

The public interest is best served by issuing the injunction. The public certainly has a strong interest in prison security, but the injunction will not impair security. The public interest, of course, is always well served by protecting the constitutional rights of all its members. In connection with the rights of Indians to practice their religion, it is worth noting that in 1978 Congress enacted and the President signed the American Indian Religious Freedom Act, 42 U.S.C. § 1996, which provides:

> On and after August 11, 1978, it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites.

## PRELIMINARY INJUNCTION ORDER

IT IS HEREBY ORDERED that defendants are enjoined and restrained during the pendency of these actions, or until further order of this court, from prohibiting plaintiffs and other inmate adherents of the Native American Religion from wearing headbands at any time, and defendants ARE ORDERED to restore to any adherent of the Native American Religion any headband that has been confiscated from him, or replace it if the confiscated headband has been lost or destroyed.

IT IS FURTHER ORDERED that defendants shall promptly communicate the content of this preliminary injunction to all ISP correctional officers and other employees who may have policy and rules enforcement responsibilities, and direct their compliance with the injunction.

Bond is waived because no pecuniary damage will result to defendants if they are wrongfully enjoined and restrained.