Harry **THERIAULT**, aka Shiloh, aka
**Bishop of Tellus**

v.

Frederick **SILBER** et al.

Dr. Harry W. **THERIAULT**

v.

Rev. Jack A. **HANBERRY.**
No. EP–72–CA–212.

United States District Court,
W. D. Texas,
El Paso Division.
March 18, 1975.

Harry W. Theriault, aka Shiloh, aka Bishop of Tellus, pro se.

Hugh P. Shovlin, U.S. Atty. by Michael T. Milligan, Asst. U.S. Atty., El Paso, Tex., Bruce Kirwan, Asst. U.S. Atty., Atlanta, Ga., for defendants.

### JUDGMENT CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN H. WOOD, JR., District Judge.

On this 18th day of March, 1975 came on for consideration and for decision on the merits the above styled and numbered cause.

This cause is before the Court pursuant to an Order of Remand by the Fifth

Circuit Court of Appeals "for a full evidentiary hearing" concerning the petitioner's claims that the defendants have punished him because of his religious views and activities; that the prison Chaplains at the Federal Correctional Institution at La Tuna, Texas have illegally reported on his religious activities; and that they have denied him the free exercise of his religion, Theriault v. Carlson, 495 F.2d 390, 395 (1974), hereinafter referred to as Theriault I and II.

Pursuant to this Order of Remand this Court commenced a comprehensive and exhaustive hearing on trial on the merits of petitioner's claims on August 20, 1974 at El Paso, Texas.

On March 5, 1975 United States District Judge Newell Edenfield ordered the transfer of Theriault I and II to this Court for consolidation inasmuch as Theriault I and II was consolidated on appeal by the Fifth Circuit with EP–72–CA–212 from this Court. On March 17, 1975 this Court accepted said transfer and ordered consolidation of the two cases for all purposes for decision on the merits.

In order to determine if First Amendment rights of free exercise of religion have been or are being infringed upon, the Court must initially determine whether or not a religion or religious beliefs are actually involved. The task is, of course, greatly simplified where an historically established and recognized religion such as Islam, Judaism or Catholicism is involved. But where, as in the instant case, a newly established allegedly legitimate religion is involved the Court is necessarily put to the difficult task of determining whether a religion or religious activity is in fact involved.

In seeking to resolve this threshold issue, the Court has allowed a wide latitude wherever practicable concerning the introduction into evidence of documents, transcripts, records and testimony. In this connection, the Court received into evidence without objection the entire multivolume transcript of the proceedings had in the United States District Court for the Northern District of Georgia concerning the same issues and controversies and involving these same parties. Theriault v. Carlson, 339 F. Supp. 375 and 353 F.Supp. 1061. The Court has also received into evidence and considered where pertinent for whatever value they may prove those portions of the record and exhibits in the petitioner's criminal trial which concern his religious views as collectivized and expressed by his so-called faith of "The Church of the New Song". U. S. A. v. Harry William Theriault, EP–73–CR–173.

Following the hearing commenced on August 20, 1974, the petitioner was given almost unlimited additional time, opportunity and leeway to obtain, examine and offer additional documentary evidence in support of his various allegations and contentions herein.

■■ As indicated above, the threshold issue before this Court to decide is "whether the beliefs professed by [petitioners] . . . are sincerely held and whether they are, in [their] own scheme of things, religious." See United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 863, 13 L.Ed.2d 733, as cited by the Fifth Circuit Court of Appeals in Theriault I and II. In view of the "long list of courts actions to which [petitioner] is a party, some of which are still pending, as well as the lengthy prison record which he has established over the years [5]," this Court will employ "sharp and careful scrutiny of his activities, including his claim of religious sincerity." See Theriault I and II, 5th Cir. 1974, supra, at page 394, of 495 F.2d. For, as reiterated by the Fifth Circuit in Theriault I and II, supra, at page 394, "First Amendment freedoms are not absolute. They are properly restricted when a sufficiently important governmental interest appears. United States v. O'Brian, 391 U.S. 367, 376, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 . . ."

■ Further, this Court recognizes, as does the Fifth Circuit in Theriault I and II, supra, at p. 395, the difficulty in establishing satisfactory and precise

standards by which to judge the bona fides of petitioner's alleged religion. Whatever the difficulties are, they do not, by their existence, obviate the necessity of deciding the issue nor do they provide an impenetrable obstacle "to denials of First Amendment protection to so-called religions which tend to mock established institutions and are obviously shams and absurdities and whose members are patently devoid of religious sincerity . . ." Theriault I and II, supra, at p. 395.

Several facts developed during the proceedings had at Atlanta in the case of Theriault v. Carlson, 339 F.Supp. 375, and succinctly restated by the Fifth Circuit in Theriault I and II, are relevant to this Court's consideration herein. Among these are:

1. That "the Eclatarin faith, or Church of the New Song, was originally founded by Theriault and Jerry M. Dorrough at the federal penitentiary at Atlanta, Georgia, allegedly as the result of visions experienced by Theriault at the Marion, Illinois federal penitentiary in which he received prophetic messages from 'Eclat' informing him that he was the 'Eclatarian Nazarite' and directing him to establish the Church of the New Song." Theriault I and II, supra, footnote 1, p. 391;

2. That "Theriault acquired his Doctor of Divinity certificate through a mail order application. Theriault then, as self-appointed 'Bishop of Tellus' ordained Dorrough First Revelation Minister of the Church of the New Song . . .", supra, footnote 2 p. 392;

3. That when Theriault "and Dorrough decided to file this complaint (in the U.S. District Court for the Northern District of Georgia, Theriault, et al. v. Carlson, et al., supra) they needed the proper caption. Dorrough came forward with this suggestion which they adopted: 'You put yourself down, you be the head of the church, that's the Bishop, you put yours, and put me down as the First Minister," supra, footnote 3, p. 392;

4. That the "Eclatarian faithful, aside from one secretary, are to be found only in the federal penitentiaries of Atlanta and Marion." Theriault, 339 F.Supp. 375, 377 N. 3. Of course, now the federal penitentiary at La Tuna, Texas can be added to the list as the petitioner Theriault is now incarcerated there;

5. That "at the final hearing at Atlanta held in January 1972, several correctional officers and other prison officials from the Marion, Illinois penitentiary testified about various threats by Theriault of mass violence, veiled threats of murder, actual physical assault and battery of prison officials, and destruction by Theriault of prison property." Theriault I and II, supra, at p. 392; and

6. To this incomplete, but representative, list of relevant factors can be added Theriault's conviction before this Court by a Jury of assault on federal officers and destruction of government property arising out of an incident occurring during Theriault's transfer to the Federal Penitentiary at La Tuna, Texas, during which Theriault, handcuffed and confined by legirons, vaulted over the back seat of the government vehicle in which he was being transported by the federal officers and, by jamming his feet through the steering wheel of of the vehicle, caused it to proceed out of control and overturn injuring the federal officers so transporting him.

The Court has examined all of the documents, testimony and records made of record in the instant case together with the evidence presented at the various hearings had herein and the arguments of all parties and finds the petitioner's contentions to be lacking.

The Church of the New Song appears not to be a religion, but rather as a masquerade designed to obtain First Amendment protection for acts which otherwise would be unlawful and/or reasonably disallowed by the various prison authorities but for the attempts which have been and are being made to classify them as "religious" and, therefore, presumably protected by the First Amendment.

Rather than urging upon its followers any particular theology or philosophy of life, the Church of the New Song appears to encourage a relatively non-structured, free-form, do-as-you-please philosophy, the sole purpose of which is to cause or encourage disruption of established prison discipline for the sake of disruption. Disruption of and/or problems for prison authorities is not the *result* of this so-called religion; it is rather the underlying *purpose* of it. For example, the "Church's" one attempt at a paschal type feast produced a tongue-in-cheek request for prison authorities to supply steak and wine. Further, as Warden Rigsby has testified, the services which petitioner's followers were allowed to hold at the Atlanta penitentiary were nothing more than "gripe sessions" designed to attempt to gain advantages over other inmates not belonging to the "group" and were totally lacking in anything approaching religious content.

Petitioner and his cohorts have formed an organization whose purpose is to improve the position of member prison inmates vis-a-vis the prison administrations. To obtain leverage for the organization and to enable it to operate more freely within the Federal Penitentiaries, petitioner has christened it a "religion" and endowed it with the trappings thereof. Thus, it is that the unmistakeable stench of the skunk is found emanating from that which petitioner has declared a rose.

The Fifth Circuit has held that some standards must be applied to determine the legitimacy and validity of a "religion" and has recommended that such standards be applied with sharp and careful scrutiny to petitioner's "Church of the New Song". The exclusively political and non-religious nature of the doctrine of the "Church of the New Song", as that doctrine has developed in the writings of the petitioner over the past three years, together with the violent and raucous tone of its services at the Atlanta Penitentiary, indicate that the "Church" has totally failed the "trial run" test which it received in the Northern District of Georgia three years ago.

Therefore, having considered the entire record of the case, the arguments of counsel and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Early in 1971, while incarcerated at the Federal Penitentiary at Atlanta, Georgia, petitioner, Harry W. Theriault, and Jerry M. Dorrough formed an organization among their fellow prisoners and denominated it the "Church of the New Song". Over the past five years the organization has met with some small success within State and Federal prisons, but has been of negligible appeal outside of prison.

2. Petitioner contends without dispute and the Court so finds that he is the leader and head of the "Church of the New Song". His pronouncements on the tenets, beliefs, ideas, practices and general principles of the "Church of the New Song" are thus authoritative of the official position of the "Church of the New Song".

3. Petitioner has committed various and numerous infractions of prison rules during his stay at the Federal Correctional Institution at La Tuna, Texas beginning in March of 1972.

4. The beliefs professed by the petitioner are not sincerely held and do not in their own scheme of things constitute a "religion" nor are they sincerely of a "religious" character.

5. The so-called "Church of the New Song" does not meet the criteria adopted by this Court in its analysis above to

entitle it to First Amendment protection as a religion. It is clearly a sham designed and calculated to obtain favored treatment for its members incarcerated in various prisons.

6. There is no evidence of probative force to substantiate plaintiff's claims that defendants violated the "establishment of religion" clause of the First Amendment in their provision of religious services to the inmates at Federal prisons.

■ 7. There is no evidence of probative force that defendants or anyone acting for them or under their authority or control illegally reported anything to anyone in any way concerning any of petitioner's activities or that defendants in any manner improperly or illegally interfered with or impeded the peti-

tioner or his followers in attempting to establish or practice a "religion".

## CONCLUSIONS OF LAW

■ 1. Any restraints and/or disciplinary measures invoked against petitioner by defendants resulted from his various infractions of prison rules and not out of retaliation for or in response to any legitimate religious activities. Such restraints and/or disciplinary measures were of reasonable nature under the circumstances.

2. The "Church of the New Song" is not a religion within the scope of the First Amendment.

3. Not being a religion within the scope of the First Amendment, the "Church of the New Song" is not entitled to First Amendment protection as a religion.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

HARRY THERIAULT, AKA SHILOH, AKA BISHOP OF TELLUS

V.

FREDERICK SILBER, ET AL.

EP 72 CA 212

\* \* \*

DR. HARRY W. THERIAULT

V.

REV. JACK A. HANBERRY

C.A. 13872
U. S. District Court
Northern District of
Georgia

## JUDGMENT

On this 18th day of March, 1975, came on to be considered the above styled and numbered consolidated causes.

This action came on for hearing and trial on the merits before the Court and the issues having been fully heard and tried and a decision having been rendered by this Court in its Judgment Containing Findings of Fact and Conclusions of Law entered herein,

It is therefore ORDERED, ADJUDGED, and DECREED that the plaintiff herein take nothing by his suit and that the suit be and the same is hereby and in all things DISMISSED on the merits.

ORDERED AND ENTERED this 18th day of March, 1975.

John H. Wood, Jr.
JOHN H. WOOD, JR.
UNITED STATES DISTRICT JUDGE