590 F.2d 294
 Richard L. JONES, # 126374, Plaintiff-Appellant,
v.
Harold B. BRADLEY, Director, Department of Corrections of
the Department of Social and Health Services, B. J. Rhay,
Superintendent, Washington State Penitentiary, (and) Father
James Cummins, Chaplain, Washington State Penitentiary,
Defendants-Appellees.
 No. 77-1302.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 11, 1979.
Rehearing Denied Feb. 20, 1979.
 
 Richard L. Jones, in pro per.
 Slade Gorton, Atty. Gen., Olympia, Wash., for defendants-appellees.
 Appeal from the United States District Court for the District of Eastern Washington.
 Before WRIGHT and GOODWIN, Circuit Judges, and JAMESON, District Judge.*
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 Jones, an inmate at Washington State Penitentiary and a self-proclaimed pastor of the Universal Life Church (ULC), seeks injunctive relief and damages against prison officials for denying him the free exercise of religion guaranteed by the First Amendment.[1] The district court dismissed the complaint with prejudice, concluding that the ULC is not a religion and not entitled to First Amendment protections. We do not reach that question, but affirm the dismissal on other grounds.
 
 
 2
 Following prison regulations, appellees have denied Jones use of the prison chapel to conduct study sessions and have refused him permission to perform marriages involving inmates. They claim that the ULC is not a religion and that the regulations are reasonable and necessary to ensure discipline and good order in the prison.
 
 
 3
 Jones alleges on appeal that the district court exceeded its authority in holding that the ULC is not a religion. He also asserts that denial of the use of the chapel and interference with his performance of marriages violate his right to the free exercise of religion.
 
 I. The ULC as a Religion
 
 4
 It is clearly impermissible to inquire into the "truth" of religious doctrines or beliefs. United States v. Ballard, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944). There is no prohibition, however, against ruling whether or not a set of beliefs constitutes a religion when deciding if First Amendment protections apply.[2] The district court did not act improperly in reaching the question whether the ULC was a religion.
 
 
 5
 Although we understand the basis for the district court's conclusion,[3] we need not reach that question. Assuming that the ULC and its members are entitled to First Amendment protections, there was no abridgement of free exercise rights here.
 
 II. Denial of Chapel Use
 
 6
 Prison regulations require a prison chaplain or outside sponsor to be present and directly responsible for all meetings in the chapel. This is required if the institution is to provide a place for contemplation and private worship without custodial supervision by prison guards.
 
 
 7
 Jones was denied use of the chapel for several reasons. Prison chaplains refused to sponsor his meeting because they did not recognize the ULC as a religion and Jones proposed no outside sponsor. Further, Jones wished to use the chapel for "study groups" rather than worship services. At no time did he request another room for his study groups.
 
 
 8
 The Supreme Court has concluded that a prisoner must be given "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts". Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). The Court, however, carefully qualified this statement:
 
 
 9
 We do not suggest, of course, that every religious sect or group within a prison however few in number must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty.
 
 
 10
 405 U.S. at 322 n. 2, 92 S.Ct. at 1081.
 
 
 11
 Efforts to provide a reasonable opportunity for an inmate to pursue his faith must also be evaluated in light of the state's legitimate interest in prison security. The Supreme Court has recognized this fact and concluded that
 
 
 12
 challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.
 
 
 13
 Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).
 
 
 14
 Appellees have a legitimate interest in maintaining the chapel as a place of refuge, free from custodial supervision, in their efforts to rehabilitate inmates. Appropriate restrictions on chapel use, including requiring the presence of an outside sponsor for chapel meetings, are reasonable to maintain order and security.
 
 
 15
 Jones did not intend to use the chapel for the contemplative or ceremonial purposes for which it was intended and provided. He did not propose an outside sponsor for his study groups, nor did he request use of another room that would have presented fewer security problems. We conclude that he was not denied "a reasonable opportunity of pursuing his faith."
 
 
 16
 III. Interference with the Performance of Marriages
 
 
 17
 Jones apparently claims that, as a pastor of the ULC, he has a First Amendment free exercise right to perform marriages. We find no support for that proposition. Licensing and performing of marriages are traditionally matters of state law. Maynard v. Hill, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1888). See also Johnson v. Rockefeller, 365 F.Supp. 377 (S.D.N.Y. 1973), Aff'd sub nom. Butler v. Wilson, 415 U.S. 953, 94 S.Ct. 1479, 39 L.Ed.2d 569 (1974) (civil death statute barring life term inmate from marrying is not unconstitutional).
 
 IV. Conclusion
 
 18
 Assuming that the Universal Life Church is a religion entitled to First Amendment protections, appellant's rights to the free exercise of religion were not abridged.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Senior District Judge, District of Montana
 
 
 [1]
 Jones originally attempted to bring a class action on behalf of other inmates but the district court refused to certify the class. At trial, Jones abandoned that effort and sued only in his own behalf
 
 
 [2]
 See, e. g., Wisconsin v. Yoder, 406 U.S. 205, 215-16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1974):
 Although a determination of what is a "religious" belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religion Clauses.
 One district court has stated that, although "(t)he task is . . . greatly simplified where an historically established and recognized religion such as Islam, Judaism or Catholicism is involved", a court "must initially determine whether or not a religion or religious beliefs are actually involved" in a case dealing with a free exercise question. Theriault v. Silber, 391 F.Supp. 578, 580 (W.D.Tex.1975).
 
 
 [3]
 A copy of "Universal Life" newspaper, Volume 14, Number 7, submitted by Jones to the district court, declares that:
 The ULC has no traditional doctrine. We, the organization, only believe in that which is RIGHT. Each individual has the privilege and the responsibility to determine what is RIGHT for him as long as it does not infringe on the RIGHTS of others.
 The church sells a variety of doctoral degrees to anyone wishing to start a ULC branch.
 Several courts have undertaken the difficult task of deciding what is a religion. E. g., Lipp v. Procunier, 395 F.Supp. 871 (N.D.Cal.1975); Theriault v. Silber, 391 F.Supp. 578 (W.D.Tex.1975) (on remand from the Fifth Circuit, Theriault v. Carlson, 495 F.2d 390 (1974)); Fellowship of Humanity v. Alameda County, 153 Cal.App.2d 673, 315 P.2d 394 (1957). Under the standards of these cases, the ULC probably would not qualify as a religion. Expert testimony heard by the district court also urged this conclusion. But see Remmers v. Brewer, 361 F.Supp. 537 (S.D.Iowa 1973), Aff'd 494 F.2d 1277 (8th Cir. 1974).