675 F.2d 579
 62 A.L.R.Fed. 473
 Terry DREIBELBIS, Appellant,
v.
Ronald J. MARKS, Commissioner of Corrections; G. R. Jeffes,
Superintendent; G. Walters, Deputy Superintendent, State
Correctional Institution at Dallas, Pennsylvania; J. Ryan,
Deputy Superintendent; D. Larkins, Director of Treatment; J.
Stepanik, Major; C. Levan, Lt.; E. J. Brannegan, C. O. I.;
J. R. Dzury, C. O. I.; and D. Wilde, C. O. I., Appellees.
 No. 80-2847.
 United States Court of Appeals,
Third Circuit.
 Submitted April 8, 1982.
Decided April 12, 1982.
 
 Terry Dreibelbis, pro se.
 Sally A. Lied, Francis R. Filipi, Deputy Attys. Gen., Leroy S. Zimmerman, Atty. Gen., Harrisburg, Pa., for appellee.
 Before SEITZ, Chief Judge, HIGGINBOTHAM and BECKER, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM:
 
 
 1
 Terry Dreibelbis appeals the order of the district court dismissing his civil rights complaint as frivolous under 28 U.S.C. § 1915(d) (1976). This court has jurisdiction under 28 U.S.C. § 1291 (1976).I.
 
 
 2
 Dreibelbis, an inmate at the State Correctional Institution at Dallas, Pennsylvania, brought this action under 42 U.S.C. § 1983 (1976) against state prison officials. He alleges that Pennsylvania Bureau of Correction Administrative Directive 807, which prescribes hair grooming standards, impermissibly infringes his first amendment religious freedoms. Dreibelbis alleges that he is an ordained minister and deacon of the Church of Prophetic Meditation, and that the laws of his faith prohibit him from cutting hair from any part of his body.
 
 
 3
 Dreibelbis contends that, because of his religious beliefs, he refused to comply with orders to cut his hair pursuant to the Administrative Directive, and consequently, received several misconduct reports. He further contends that these misconduct reports have resulted in the loss of privileges and in segregated confinement. He argues that the Administrative Directive, as applied to him, violates his first and fourteenth amendment rights to free exercise of religion, and seeks compensatory and punitive damages as well as injunctive and declaratory relief.
 
 
 4
 Appellant's complaint was referred to a United States Magistrate. He recommended that the complaint be dismissed pursuant to 28 U.S.C. § 1915(d), which permits the dismissal of an action brought in forma pauperis if the court "is satisfied that the action is frivolous or malicious." In concluding that the action was frivolous, the magistrate noted that "the courts are almost unanimous in holding that it is well within the sound discretion of prison authorities, and not the courts, to determine the perimeters of hair grooming regulations for hygiene purposes in the prison setting." The district court agreed with the magistrate. Observing that "the unreasonableness or unfairness of the regulation has not been demonstrated," the court dismissed the action without service of process.
 
 II.
 
 5
 Courts have struggled to articulate a precise definition of "frivolous" for the purposes of section 1915(d). Although no single formulation has emerged, most courts require that a complaint state a colorable legal argument in order to survive a section 1915 dismissal. See, e.g., Collins v. Hladky, 603 F.2d 824, 828 (10th Cir. 1979) (suggesting that an action is frivolous if the plaintiff "can make no rational argument on the law or the facts in support of his claim."); Boyce v. Alizaduh, 595 F.2d 948, 951-52 (4th Cir. 1979); Pembrook v. Wilson, 370 F.2d 37, 39 (9th Cir. 1966); cf. Keno v. Doe, 74 F.R.D. 587, 588 (D.N.J.1977), aff'd 578 F.2d 1374 (3d Cir. 1978) (defining "frivolous action" as one in which the plaintiff's "realistic chances of ultimate success are slight"); Clark v. Zimmerman, 394 F.Supp. 1166 (M.D.Pa.1975) (same). In United States ex rel. Walker v. Fayette City, 599 F.2d 573 (3d Cir. 1976) (per curiam), this court implicitly adopted the standard of frivolousness applied by the Supreme Court in another context: "(A) matter is not frivolous if 'any of the legal points (are) arguable on their merits.' " Id. at 575 (quoting Anders v. California, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967) (defining "frivolous" for purposes of indigent's right to counsel on appeal)). See Watson v. Ault, 525 F.2d 886, 892 (5th Cir. 1976) (applying Anders standard to a § 1915(d) dismissal).
 
 
 6
 We believe that when measured by any of these variations, the district court's dismissal of appellant's complaint under section 1915(d) did not constitute a sound exercise of discretion. It is true, as the district court observed, that "(a) prisoner's right to practice his religion is not absolute" and that prison officials may restrict the exercise of an inmate's constitutional rights when necessary to facilitate some legitimate goals and policies of penal institutions. See Bell v. Wolfish, 441 U.S. 520, 545-46, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). The Supreme Court has made clear, however, that prison officials do not have unbridled discretion to impose such restrictions. The Court has required " 'a mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.' " Id. at 546, 99 S.Ct. at 1877 (quoting Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974)).
 
 
 7
 As appellees concede, neither the Supreme Court nor this court has yet fashioned a rule based upon a "mutual accommodation" between the two interests at issue in this case: the state's interest in the uniform applicability of Administrative Directive 807 and the appellant's interest in adhering to the tenets of his faith. Cf. Poe v. Werner, 386 F.Supp. 1014 (M.D.Pa.1974) (three judge court) (upholding grooming regulation against due process and equal protection challenge); United States ex rel. Frow v. Walters, No. 74-286 (W.D.Pa. March 27, 1975) (three judge court) (same). See also Goulden v. Oliver, 442 U.S. 922, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979) (Blackmun, J. and Brennan, J., dissenting from denial of certiorari). Although we do not intimate how we would resolve the conflict between these two competing interests, we believe that appellant's complaint presents a substantial question of constitutional law. In fact, the courts that have considered similar claims have reached different conclusions. Compare Teterud v. Burns, 522 F.2d 357 (8th Cir. 1975) (holding hair regulation impermissibly conflicted with inmate's first amendment rights); Moskowitz v. Wilkinson, 432 F.Supp. 947 (D.Conn.1977) (same), with Brooks v. Wainwright, 428 F.2d 652 (5th Cir. 1970) (sustaining hair regulation against first amendment challenge); United States ex rel. Goings v. Aaron, 350 F.Supp. 1 (D.Minn.1972) (same). In light of the absence of controlling precedent in the circuit, and the conflict in other circuits, we cannot agree with the district court that appellant's complaint was "frivolous" under section 1915(d).
 
 III.
 
 8
 We believe that the existence of a complete factual record is critical to the task of striking a balance between the two competing interests in this case. It is particularly important that the record reveal the state's interest in a prison regulation that allegedly inhibits an inmate's first amendment rights. See Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) ("challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system"). Indeed, when this court has had occasion to balance a prison regulation against an asserted constitutional right, our analysis of the penological objectives supporting the regulation has frequently been determinative. See St. Clair v. Cuyler, 634 F.2d 109 (3d Cir. 1980); Rhodes v. Robinson, 612 F.2d 766 (3d Cir. 1979); O'Malley v. Brierly, 477 F.2d 785 (3d Cir. 1973). In this case, however, the district court dismissed the action without service of process, and therefore prison officials have not had the opportunity to articulate the justifications for Administrative Directive 807. We are thus unable to properly analyze the case in its current posture; at the very least a record must be made as to the state's justifications for the regulation. See Burgin v. Henderson, 536 F.2d 501, 504 (2d Cir. 1976) (holding prisoner's complaint of interference with free exercise of religion required "a factual hearing on the state's purported justification for a rule preventing beards"); Shabazz v. Barnauskas, 598 F.2d 345, 347 (5th Cir. 1979) (same).
 
 IV.
 
 9
 We note that plaintiff has pled that his beliefs about the cutting of hair are religious in character and are sincere. Indeed, he has attached to his pleadings an itemized list of the tenets of his religion, which include the following:
 
 
 10
 IV. All members of the Church of Prophetic Meditation are required to keep their physical body in its natural God-given form. No member is allowed to cut hair from any part of the body or in any other way alter the body. The only exceptions being circumcision and the cutting of finger and toenails to prevent injury.
 
 
 11
 It may be that the district judge will decide to deal with this case by accepting plaintiff's representations as to his religious beliefs and incorporating them into the balance that must be struck. If that is not satisfactory, or if the question is not susceptible to summary disposition on that basis, the striking of a proper balance may require a more detailed inquiry into plaintiff's claim before his particular beliefs are accorded first amendment protection. Africa v. Commonwealth of Pennsylvania, 662 F.2d 1025 (3d Cir. 1981).
 
 
 12
 A court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things. If either of these two requirements is not satisfied, the court need not reach the question, often quite difficult in the penological setting, whether a legitimate and reasonably exercised state interest outweighs the proffered first amendment claim.
 
 
 13
 Id. at 1030 (citations and footnote omitted). Naturally, we leave the management of the case to the district judge, though we note that if the matter must proceed to trial, it will be necessary for the district judge to make explicit findings as to the elements composing the balance.
 
 V.
 
 14
 The order of the district court will be reversed and the case will be remanded for proceedings consistent with this opinion.