693 F.2d 45
 Clovis Carl GREEN, Jr. on behalf of himself and all other
inmates similarly situated, Appellant,
v.
Carl WHITE, Superintendent, Missouri Training Center for
Men, Moberly, Missouri, Appellee.
 No. 81-2006.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 11, 1982.
Decided Nov. 17, 1982.
 
 P. Terence Crebs, St. Louis, Mo., for appellant.
 John Ashcroft, Atty. Gen., Michael H. Finkelstein, Steven W. Garrett, Asst. Attys. Gen., Jefferson City, Mo., for appellee.
 Before LAY, Chief Judge, and McMILLIAN and JOHN R. GIBSON, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 This appeal from the district court's order, 525 F.Supp. 81, granting the defendant's motion for summary judgment brings this case before this court for the third time. We previously considered the plaintiff's claims in Green v. White, 605 F.2d 376 (8th Cir.1979) (Green I ), cert. denied, 444 U.S. 1083, 1093, 100 S.Ct. 1038, 1060, 62 L.Ed.2d 767, 782 (1980), and in Green v. White, 628 F.2d 1126 (8th Cir.1980) (Green II ). For the reasons stated below we now affirm the district court's dismissal of the action.
 
 
 2
 The facts underlying the present dispute are discussed in Green I and need not be repeated here. In the early part of 1976 Clovis Green was incarcerated briefly at the Missouri Training Center for Men at Moberly, Missouri (Moberly).[1] Green sued defendant White, Superintendent of Moberly, pursuant to 42 U.S.C. Sec. 1983 on the grounds that White had violated Green's right to exercise his religious beliefs freely. In both Green I and Green II we held that certain of Green's allegations did not state frivolous claims[2] and remanded to the district court to hold an evidentiary hearing. The only issue before us on this appeal is whether the hearing held by the district court on White's motion for summary judgment complies with our mandate and the procedures established by the Supreme Court.
 
 
 3
 Green's first contention is that the district court erred in holding a hearing on the summary judgment motion only two days after it was filed. The timing of the hearing violated rule 56(c) of the Federal Rules of Civil Procedure. Rule 56(c) provides in pertinent part: "The motion shall be served at least 10 days before the time fixed for the hearing." The purpose of this provision is to provide the nonmoving party with adequate time to prepare an opposition. See 10 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2719, at 451 (1973). Green, however, did not object to the timing of the hearing and did not complain that he was prejudiced by the timing. He was the only witness that he would have called at trial and he testified at the hearing. Other courts have held that it is not reversible error for the district court to grant summary judgment in such a situation. E.g., Hoopes v. Equifax, Inc., 611 F.2d 134, 136 (6th Cir.1979); see also Kelsey v. Minnesota, 565 F.2d 503, 506 n. 2 (8th Cir.1977) (ten day provision may be waived and may be harmless error). We conclude it was not reversible error on the facts of this case for the district court to hear the motion before the ten days had run.[3]
 
 
 4
 Green contends secondly that the testimony at the hearing raised genuine issues of material fact that could not be resolved by a motion for summary judgment. This contention fails, however, under the standards recently enunciated by the Supreme Court in Harlow v. Fitzgerald, --- U.S. ----, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
 
 
 5
 A government official such as White who is subject to a section 1983 suit may plead as an affirmative defense a qualified or good faith immunity from suit. Scheuer v. Rhodes, 416 U.S. 232, 247-48, 94 S.Ct. 1683, 1691-92, 40 L.Ed.2d 90 (1974). The qualified immunity defense formerly required both an objective and subjective test of the official's good faith. Wood v. Strickland, 420 U.S. 308, 321-22, 95 S.Ct. 992, 1000-1001, 43 L.Ed.2d 214 (1975). The subjective element traditionally included an inquiry into the "malicious intention" of the official, id. at 322, 95 S.Ct. at 1001, which many courts, and plaintiff here, considered an issue of fact unsuitable for resolution by summary judgment. See Harlow, 102 S.Ct. at 2737-38 & n. 27 (citing cases). The Supreme Court, however, took a different view of this inquiry in Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), in which it recognized that: "damages suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity." Id. at 508, 98 S.Ct. at 2911 (footnote omitted). This attempted expediency in Butz and the subjective test of good faith in Wood appeared incompatible until the Supreme Court's decision in Harlow.
 
 
 6
 The Harlow Court recognized the substantial costs generated by the litigation of subjective good faith of an official. Litigation distracts officials from their governmental duties, inhibits discretionary action, and deters able people from public service. 102 S.Ct. at 2738. Further, the judicial inquiry may be so wide in scope as to be peculiarly disruptive of effective government. Id. Therefore, Harlow changed the subjective and objective tests to a solely objective test of qualified immunity and held that: "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id.
 
 
 7
 Applying the Harlow objective standard to Green's allegations and the testimony at the evidentiary hearing demonstrates that this is an appropriate case to dismiss by summary judgment. Green could not show that White violated any of his "clearly established statutory or constitutional rights" by imposing reasonable restrictions on the exercise of Green's religion. Our recent cases have held that the exercise of religious freedom in prisons may be circumscribed by reasonable requirements of prison safety and order. Otey v. Best, 680 F.2d 1231, 1233 (8th Cir.1982); Rogers v. Scurr, 676 F.2d 1211, 1215 (8th Cir.1982). Prison officials must have wide latitude in enacting reasonable regulations in light of institutional security. Green has not shown any of these regulations unreasonably infringed on his exercise of religion.
 
 
 8
 First, Green alleged that he was not allowed to hold religious services or Bible study classes with other inmates. White testified that Moberly is a medium security institution and that inmates in each wing of the prison have free access to other people living in that wing. There was no prohibition against Green inviting other inmates to his room and conducting Bible study classes. Green admitted that he had been allowed to do that.
 
 
 9
 Second, Green complained that he was not allowed to distribute the religious newspaper of his church. White testified that any inmate could distribute literature that would not cause alarm or provoke the inmate population. Green could not produce a copy of this newspaper at the hearing and testified only that he was told by prison officials to request permission to put together a newspaper. He did not testify that he had actually requested permission and that the permission was denied.
 
 
 10
 Third, Green claimed that he was not allowed to grow a beard or have long hair as an incident of practicing his religion. Although prison regulations regarding long hair may have changed following this court's decision in Teterud v. Burns, 522 F.2d 357 (8th Cir.1975) (American Indian inmate may not be prohibited from wearing long braided hair), at the time of Green's complaint prison regulations prohibited long hair and beards for security reasons. White is not a lawyer, must rely on regulations issued by the Missouri Division of Corrections, and had no reason to know that there may have been a change in the law regarding inmates' rights to have long hair. See Harlow, 102 S.Ct. at 2739.
 
 
 11
 The testimony at the hearing and White's affidavit in support of the motion for summary judgment all show that Green had no "clearly established rights" that were implicated by White. Without this initial showing that a clearly established right was violated, Green cannot get past the threshold immunity question and survive a motion for summary judgment. Id.; see 102 S.Ct. at 2740 (Brennan, J., concurring). Such a result is favored by the policy underlying Harlow to avoid extensive disruption of the government and to terminate insubstantial claims.
 
 
 12
 Our previous mandate requiring an evidentiary hearing did not require a jury trial or confirm that Green had established a prima facie case on the issues alleged. The evidentiary hearing held pursuant to defendant's motion for summary judgment complies with our mandate issued in Green I and Green II and with the standard enunciated in Harlow. The judgment of the district court is affirmed.
 
 
 
 [1]
 Green was at Moberly from March 9, 1976, to April 15, 1976, and his claims for damages arise out of that period. As the district court noted, injunctive relief is inappropriate because Green is no longer in defendant's custody. Wycoff v. Brewer, 572 F.2d 1260, 1262 (8th Cir.1978)
 
 
 [2]
 Green is proceeding on three issues only:
 (1) the alleged denial of his right to participate in church worship services and Bible study classes; (2) the alleged denial of his right to wear long hair and a beard as an incident of the exercise of his religion; and (3) the alleged denial of his right to distribute the religious literature of his church.
 605 F.2d at 377.
 
 
 [3]
 Green's counsel at oral argument stated that he considered this hearing to be in anticipation of trial. Regardless of counsel's perception of the hearing, the district court stated at the outset that one purpose of the hearing was "for the parties to put on whatever evidence they have concerning the motion of Defendant for summary judgment." Transcript of hearing on motion for summary judgment at 3