Felix E. CAPOEMAN,
Plaintiff-Appellant,

v.

Amos REED, et al.,
Defendants-Appellees.

No. 84–3759.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1984.

Decided March 6, 1985.

As Amended April 22, 1985.

Andrew H. Salter, Seattle, Wash., for plaintiff-appellant.

Michael Madden, Asst. Atty. Gen., Olympia, Wash., for defendants-appellees.

Before BROWNING, GOODWIN, and SKOPIL, Circuit Judges.

SKOPIL, Circuit Judge:

The question presented is whether the forced cutting of a Native American's hair by prison officials was a violation of "clearly established" constitutional rights for purposes of determining whether defendants are entitled to assert an immunity defense to a civil rights action. We conclude that the constitutional right was not

clearly established at the time of the hair cut because courts had failed to develop a clear standard of legal analysis in prisoner free expression cases. Accordingly, we affirm.

## FACTS AND PROCEEDINGS BELOW

Appellant Capoeman is a Quinault Indian who wears his hair long as an expression of his religious beliefs and cultural identity. In 1981 he was convicted in state court and sentenced to confinement in a Washington state facility. Capoeman was ordered to submit to a haircut to enable officials to take a "before and after" photograph for identification purposes. Capoeman immediately objected on religious grounds and offered to tie his hair back for the photo. Capoeman continued for the next week resisting the haircut. He made his views known to defendants and cited to them the leading authority for his position, *Teterud v. Burns*, 522 F.2d 357 (8th Cir.1975).

On January 30, 1981 correctional officers took Capoeman from his cell to cut his hair. Capoeman did not resist physically but did continue to assert that cutting his hair was in violation of his constitutional rights. He offered to go into the segregation unit until the matter could be resolved. Despite the protests Capoeman's hair was cut.

The prison's policy on haircuts was amended in May 1982 to exempt inmates who are members of recognized Indian tribes. Capoeman was released from prison in 1983 when his conviction was reversed by the Washington Court of Appeals. Shortly thereafter he filed this civil rights action seeking declaratory and injunctive relief and damages for the alleged violation of his first amendment right to the free exercise of religion.

Following cross-motions for summary judgment, the district court issued an opinion concluding that (1) Capoeman's claim for injunctive relief was made moot by the change of policy and by his release; (2) the forced cutting of Capoeman's hair after his

protestations "constituted a serious violation of his constitutional rights at the hands of state officials"; and (3) defendants were immune from damages because the constitutional right at issue was not "clearly established" at the time of the incident. On appeal the only issue is whether the district court properly concluded that the defendants were immune from damages.

## DISCUSSION

### A. Standard of Review

In reviewing a grant of summary judgment, we need only decide whether there exists any material disputed fact and whether the substantive law was correctly applied. *Amaro v. Continental Can Co.*, 724 F.2d 747, 749 (9th Cir.1984). There are no disputed facts here. Accordingly we must determine as a matter of law whether defendants are entitled to immunity. *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1465 n. 5 (9th Cir.1984). Questions of law are freely reviewed. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) *(en banc)*, cert. denied, — U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### B. Qualified Immunity

■ Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages "unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Davis v. Scherer*, — U.S. ——, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984). The applicable standard is defined in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). There the Court eliminated the subjective "malicious intention" requirement articulated in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), in favor of an objective test. See *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 578 n. 24 (9th Cir.1984) (*Harlow* eliminated subjective test); *Albers v. Whit-*

*ley,* 743 F.2d 1372, 1376 (9th Cir.1984) (describing *Harlow* standard as objective). Under *Harlow's* objective standard "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

The district court examined whether at the time of the incident there was a "clearly established" right retained by prison inmates to refuse haircuts on religious grounds. The court found that on the date of the incident one published opinion from the Eighth Circuit and two opinions from the Second Circuit held that inmates legitimately could resist haircuts and shaves on religious grounds. Although there were no cases cited to the contrary and the district court found that the defendants should have "hesitated to act" in the face of judicial authority adverse to their positions, the court nevertheless concluded that decisions from other circuits "cannot constitute a 'clearly established' right of inmates not to have their hair cut."

We are initially faced with the task of defining *Harlow's* "clearly established" standard. Twice the Supreme Court avoided the task by finding it unnecessary to decide whether the "state of the law is evaluated by reference to the opinions of this Court, of the Courts of Appeals, or of the local District Court." *Procunier v. Navarette,* 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); *Harlow,* 457 U.S. at 818, n. 32, 102 S.Ct. at 2739, n. 32 (quoted in part). Recently, the D.C. Circuit concluded that it is still not clear how a court should determine well-established rights. *Hobson v. Wilson,* 737 F.2d 1, 25–26 (D.C.Cir.1984); *see also Zweibon v. Mitchell,* 720 F.2d 162, 168–69 (D.C.Cir. 1983) ("clearly established law" difficult to define), *cert. denied,* —— U.S. ——, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984).

In *Bilbrey,* 738 F.2d at 1466, we sought to apply the *Harlow* standard. We found no explicit rulings by the Supreme Court or by this circuit concerning the legality of student searches. Nonetheless, we found that the basic fourth amendment rights of students had been sufficiently clearly established at the time to prevent the defendants' immunity. *Id.* In support of that conclusion, we reviewed decisions of state courts, another circuit and various district courts. *Id.* We conclude that in the absence of binding precedent, a court should look to whatever decisional law is available to ascertain whether the law is clearly established under the *Harlow* test. *Bilbrey,* 738 F.2d at 1466. But see *Wallace v. King,* 626 F.2d 1157, 1161 (4th, Cir. 1980) (immunity allowed where law not authoritatively decided by the Supreme Court, the "appropriate" court of appeals, or the highest state court), *cert. denied,* 451 U.S. 969, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981).

The relevant decisional law at the time of the incident here favors Capoeman's position. While early cases treated such prisoner claims as nearly frivolous, e.g., *Proffitt v. Ciccone,* 506 F.2d 1020 (8th Cir. 1974); *Brooks v. Wainwright,* 428 F.2d 652 (5th Cir.1970) (per curiam), when the rights were later fully examined prison regulations were found to infringe impermissibly on prisoners' constitutional rights. *See Shabazz v. Barnauskas,* 598 F.2d 345 (5th Cir.1979); *Burgin v. Henderson,* 536 F.2d 501 (2d Cir.1976); *Teterud v. Burns,* 522 F.2d 357 (8th Cir.1975); *Wright v. Raines,* 457 F.Supp. 1082 (D.Ka.1978); *Moskowitz v. Wilkinson,* 432 F.Supp. 947 (D.Conn. 1977); *Monroe v. Bombard,* 422 F.Supp. 211 (S.D.N.Y.1976).

We are aware that post-incident decisions are mixed. Courts have upheld prison hair and beard regulations against sincere first amendment religious challenges. *See Dreibelbis v. Marks,* 742 F.2d 792 (3d Cir. 1984); *Furqan v. Georgia State Board of Offender Rehabilitation,* 554 F.Supp. 873, 879–80 (N.D.Ga.1982); *cf. Madyun v.*

*Franzen,* 704 F.2d 954, 960 (7th Cir.) (upholding state's legitimate interest in having female guards frisk male prisoners against petitioner's Islamic belief that such conduct is incompatible with religion), *cert. denied,* —— U.S. ——, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). Courts have also struck down prison regulations found to constitutionally infringe on a prisoner's right to the free exercise of his religion. *E.g. Barrett v. Virginia,* 689 F.2d 498, 501–02 (4th Cir. 1982) (name change); *Gallahan v. Hollyfield,* 670 F.2d 1345 (4th Cir.1982) (per curiam) (hair length); *see also Weaver v. Jago,* 675 F.2d 116, 119 (6th Cir.1982) (per curiam) (Native American's challenge to prison's hair regulation remanded to allow state to offer more than "conclusory statements that a limitation on religious freedom is required for security, health or safety"). But, because these are post-incident decisions, they cannot determine whether the law was then clearly established.

Appellee state asserts that *Green v. White,* 693 F.2d 45 (8th Cir.1982), *cert. denied,* 462 U.S. 1111, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983) and *Jihaad v. O'Brien,* 645 F.2d 556 (6th Cir.1981), although decided after Capoeman's haircut, should nevertheless be considered to demonstrate lack of uniformity in the law. The states' reliance on these two cases is misplaced. In *Green,* the court held that officials were entitled to qualified immunity because in 1976, when Green asserted his first amendment right to long hair and a beard, the law was not sufficiently known to the officials to charge them with knowledge of a constitutional violation. *Green,* 693 F.2d at 48. Similarly, in *Jihaad* the court held that immunity was properly granted to officers who, in 1975, forced a prisoner to cut his beard worn for religious purposes because the law was not clearly established at the time. *Jihaad,* 645 F.2d at 563. In both cases the courts were examining the clarity of the law long before the time of the incident here.

■ Despite the weight of relevant cases in favor of Capoeman's position, it is unclear that the appellees here should be charged with knowledge of "clearly established" law. Where, as here, there are relatively few cases on point, and none of them are binding, an additional factor that may be considered in ascertaining whether the law is "clearly established" is a determination of the likelihood that the Supreme Court or this circuit would have reached the same result as courts which had previously considered the issue. To make the determination, we examine the legal analysis employed by those courts and compare it to the analysis being used at that time by the Ninth Circuit in related but factually different situations. In general, courts have applied a number of different legal standards to prisoner claims of infringement of free exercise rights. *See generally,* Comment, *The Religious Rights of the Incarcerated,* 125 U.Pa.L.Rev. 812 (1977) (identifying at least seven different standards for analyzing prisoner free exercise claims). Most courts have adopted and applied a less restrictive means standard. *See Gallahan,* 670 F.2d at 1346; *Teterud,* 522 F.2d at 359; *Wright,* 457 F.Supp. at 1090; *Moskowitz,* 432 F.Supp. at 951; and *Monroe,* 422 F.Supp. at 217. Other courts have attempted to balance the state's interests against the prisoner's constitutional rights. *E.g., Dreibelbis v. Marks,* 675 F.2d 579, 581 (3d Cir.1982); *Burgin,* 536 F.2d at 504. Finally, at least one court concluded that a "rational basis" standard must be applied. *Furgan,* 554 F.Supp. at 878.

The question of which standard should be applied to a prisoner's first amendment challenges to prison regulations appeared unresolved at the time of the incident here. See generally *Dreibelbis,* 742 F.2d at 794 (noting the wide diversity in the criteria applied by various courts of appeals to determine the constitutional validity of such restrictions); *Madyun,* 704 F.2d at 960, n. 7 (listing various standards applied by courts). We conclude that it was not clear at the time in question what standard the Ninth Circuit would have applied. In *Jones v. Bradley,* 590 F.2d 294 (9th Cir. 1979), an inmate challenged the prison's denial of the use of the prison chapel. The court concluded that a prisoner must be given "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Id.* at 296 (quoting *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972)). Prison regulations are to be "evaluated in light of the state's legitimate interest in prison security." *Jones v. Bradley,* 590 F.2d at 296. The court concluded that the state had a legitimate interest in placing appropriate restrictions on chapel

**1516**

use that were reasonable to maintain order and security. *Id.* There is no indication that "appropriate restrictions" meant the least restrictive means.

### CONCLUSION

In light of all the relevant factors we cannot conclude that the law was so clearly established at the time as to defeat appellees' immunity defense.

The decision below is AFFIRMED. Each side is to bear its own costs of appeal.

Ferguson, Circuit Judge, filed a dissenting opinion.