641 F.Supp. 998 (1986)
Pedro ROMÁN MELÉNDEZ, Plaintiff,
v.
Roberto INCLÁN, individually and as General Services Administrator of the Commonwealth of Puerto Rico, Defendant.
Civ. No. 85-1483 HL.
United States District Court, D. Puerto Rico.
May 9, 1986.
*999 Hector Urgell Cuebas, Pedro Miranda Corrada, José Roberto Feijoo, San Juan, P.R., for plaintiff.
Marcos A. Ramírez Lavandero, Edificio Tres Ríos, Hato Rey, P.R., for defendant.

OPINION AND ORDER
LAFFITTE, District Judge.
Plaintiff, Pedro Román Meléndez, has filed this action for damages and injunctive relief under the Civil Rights Act of 1871, 42 U.S.C. sect. 1983, and Article II, Section I of the Constitution of the Commonwealth of Puerto Rico against defendant, Roberto Inclán, General Services Administrator. Plaintiff claims he was demoted from his position as Regional Director with the General Services Administration ("GSA") because of his political affiliation in violation of his First Amendment rights to freedom of belief and association. Defendant has presented the Court with a Motion for Summary Judgment and a Motion to Stay Discovery and Trial Proceedings. Both motions are DENIED.

I. FACTS
Plaintiff claims to be a member of the New Progressive Party ("NPP") and claims defendant is a member of the Popular Democratic Party ("PDP"). The NPP was the governing party in Puerto Rico from 1976-1984. On November 6, 1984 the NPP lost the general election to the PDP.
Following the inauguration of the PDP administration on January 2, 1985, defendant, Roberto Inclán, was appointed GSA Administrator. Plaintiff, at that time, was the Regional Director of GSA for the Arecibo region, a position he had held since September, 1975. The position of GSA Regional Director is classified as a position of "trust and confidence" under the Puerto Rico Public Service Personnel Act ("Personnel Act"), 3 L.P.R.A. sect. 1349.
By letter dated March 13, 1985, defendant removed plaintiff as Regional Director and assigned him to the position of Engineer IV, a "career" position under the Personnel Act. While Regional Director, plaintiff received a monthly salary of $1,963.00. As Engineer IV his salary per month fell to $1,502.00.
*1000 An examination of the GSA enabling act, Law No. 164, Part 1, Chapt. 38, 3 L.P.R.A. 931 et seq., reveals that the purpose and function of the agency is to provide "auxiliary services" to the other Commonwealth agencies in order to "simplify and expedite [] procedures, improve the quality of the services and control operation costs." 3 L.P.R.A. sect. 931c. The "auxiliary services" for which GSA is responsible include conservation of public buildings, purchase and maintenance of office equipment and furniture, management of the "Government Printing Office" which provides printing services to the government agencies, and administration of all transportation services necessary to the Executive Branch. 3 L.P.R.A. sects. 933-933c.
GSA is divided into eight regions. Each regional office is administered by a Regional Director. According to the GSA Regional Director job description ("OP-16 letter"), submitted by defendant in support of his summary judgment motion, it appears that the primary function of the Regional Director is to coordinate and supervise the conservation and improvement of public school and government buildings. There is no evidence that the GSA Regional Directors have any involvement with the other services provided by GSA; equipment, printing or transportation.

II. DISCUSSION: QUALIFIED IMMUNITY
Defendant's motion for summary judgment raises a qualified immunity defense. Relying on Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), defendant argues he is immune from damages and from suit because plaintiff's demotion did not violate clearly settled law. In addition, defendant relies Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), to argue that the Eleventh Amendment bars the court from hearing plaintiff's claim if plaintiff's cause of action arises under the Personnel Act, 3 L.P.R.A. sects. 1301 et seq.
An award of summary judgment is proper only when it is shown on the pleadings and other evidence in the record that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). In determining whether summary judgment is appropriate the court must look at the record in a "light most favorable to ... the party opposing the motion." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).
A qualified immunity is an affirmative defense against damages liability which may be raised by state officials sued in their personal capacity. See Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Supreme Court's decision to grant state officials a qualified rather than an absolute immunity reflects an attempt to balance the importance of a damages remedy for the victim of a constitutional tort with the concern that too broad a liability may cause public officials to refrain unnecessarily from exercising their discretionary authority. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396.
The general rule of qualified immunity, set out in Harlow, supra, is that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. This rule eliminates from consideration claims of the officials' subjective state of mind, such as bad faith or malicious intention, concentrating on the "objective reasonableness" of the official's conduct.[1]
*1001 As applied, this objective qualified immunity test requires a two part analysis: 1) whether the officer's conduct violated a constitutional right "clearly established" at the time of the violation, and 2) whether the government official asserting the qualified immunity reasonably should have known a violation was being committed. See Creamer v. Porter, 754 F.2d 1311, 1317 (5th Cir.1985); Hobson v. Wilson, 737 F.2d 1, 26 (D.C.Cir.1984). The first issue presents the Court with a legal determination of the currently applicable law and whether the law was clearly established at the time the action occurred. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. Applicable law includes opinions of the U.S. Supreme Court and opinions of the Courts of Appeals and the District Courts both within and without the jurisdiction of the court deciding the issue. See Blackburn v. Snow, 771 F.2d 556 (1st Cir.1985); Green v. White, 693 F.2d 45 (8th Cir.1982). Applicable law must also include decisions interpreting the U.S. Constitution and applying federal standards by State Supreme Courts within the jurisdiction of the local federal court.
What constitutes "clearly established" law involves a more difficult inquiry. As stated in Harlow, an official is not "expected to anticipate subsequent legal developments," nor know that "the law forbade conduct not previously identified as unlawful." 457 U.S. at 818, 102 S.Ct. at 2738. Some courts have interpreted Harlow to require a relatively strict factual identity between applicable precedents and the case at issue. See, e.g., National Black Police Ass'n. v. Velde, 712 F.2d 569, 576 (D.C.Cir. 1983), cert. denied, 466 U.S. 963, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984); Saldana v. Garza, 684 F.2d 1159, 1165 (5th Cir.1982), cert. denied, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). Other courts have applied a less rigid interpretation and have held an officer responsible to relate established law to analogous factual settings. See, e.g., People Of Three Mile Island v. Nuclear Reg. Com'rs., 747 F.2d 139 (3rd Cir.1984); Williams v. Bennett, 689 F.2d 1370, 1381-82 (11th Cir.1982). It would appear the First Circuit favors the more flexible approach requiring an officer to relate settled constitutional law to analogous factual situations. In King v. Higgins, 702 F.2d 18, 20 (1st Cir.1983), the First Circuit stated that a "specific judicial articulation" is unnecessary to determine well settled law when the right alleged to be violated is basic to the constitution. See also, Blackburn, supra, at 570.
The second issue, whether the defendant official reasonably should have known by his actions that he was committing a violation of the Constitution, is a question of fact which generally presents little dispute. The reasonableness of the official's conduct is not measured against the officer's actual knowledge of constitutional standards, but against a relatively uniform level of "presumptive knowledge" of constitutional standards. Floyd v. Farrell, 765 F.2d 1, 4-5 (1st Cir.1985) (quoting Harlow, 457 U.S. at 815, 102 S.Ct. at 2736). Harlow asserted that a reasonably competent public official is presumed to know the law which governs his conduct. 457 U.S. at 819, 102 S.Ct. at 2739. However, in extraordinary circumstances when an officer can prove that he neither knew nor should have known of the relevant legal standard, he will be entitled to a qualified immunity. In this instance the court is faced with a factual issue which may be more appropriately decided by a jury. B.C.R. Transport Co., Inc. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984); Hobson, 737 F.2d at 26.
In the case before us the plaintiff claims he was demoted from the position as Regional Director of the GSA Arecibo office solely on the basis of his political affiliation. To support this claim plaintiff states he is a member of the NPP, the party which lost power in November, 1984. In March, 1985, following the appointment of PDP member, defendant, Roberto *1002 Inclán, as General Services Administrator, plaintiff was removed from the position of Regional Director. In order to decide the issue of qualified immunity as presented by defendant we take as true, for the purposes of this motion only, plaintiff's statement that he is an NPP member and was demoted for political reasons.[2]
At the time of plaintiff's demotion the law was clearly established that an individual could not be demoted or dismissed on the basis of his political affiliation. The United States Supreme Court held on two occasions that patronage dismissals of public employees violates the employees' First Amendment right of freedom of association and freedom of political beliefs. Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).
This First Amendment protection is, however, not absolute. In both Elrod and Branti the Supreme Court recognized that the need for party loyalty in some government positions outweighs the employees' constitutional right to freedom of association and freedom of belief. Elrod limited permissible patronage dismissals to employees in "policymaking" and "confidential" positions. In Branti, supra, the second opinion on this subject, the Supreme Court abandoned the labels "policymaker" and "confidential employee." The Court reasoned that those positions for which party affiliation is an important and legitimate consideration and those labeled "policymaking" or "confidential" are not necessarily coextensive.[3] In conclusion the Court held:
The ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for effective performance of the public office involved.
445 U.S. at 518, 100 S.Ct. at 1295.
In the present case, defendant makes no argument in support of his claim for a qualified immunity that the law prohibiting patronage dismissals was not clearly established. Rather, it is claimed that defendant's actions were consistent with the Constitution. According to defendant's argument, plaintiff was classified under the law of Puerto Rico as an employee of "trust and confidence" and held such a high position within the Commonwealth government that he was not protected by the First Amendment and his removal conformed with the test set out in Branti; that political affiliation was an appropriate requirement for the effective performance of plaintiff's job.
We cannot agree with this argument. The plethora of Puerto Rico Supreme Court decisions interpreting the U.S. Constitution and applying the Branti test to cases of political discrimination clearly establish that plaintiff was protected by the First Amendment.
The fact that plaintiff was classified as an employee of "trust and confidence" is not determinative of not constitutional protection. On repeated occasions the Puerto Rico Supreme Court has held that the Personnel Act, 3 L.P.R.A. sects. 1349, 1350 classifying certain government workers as "confidential" employees does not legislate away the employees' First Amendment pro *1003 tection.[4]See Colon v. Cruv, 84 JTS 52 (P.R.1984); Ramos Villanueva v. Cintron, 82 JTS 556 (P.R.1982); Carmen I. Diaz De Llobet v. Office Of the Governor, 112 D.P.R. 747 (1982); see also, Clemente Gonzalez v. Depto. De La Vivienda, 83 JTS 101 (P.R.1983); Rodriguez v. Muñoz, 603 F.Supp. 349 (D.C.P.R.1985). Plaintiffs in each of the above cases were employees in positions of "trust and confidence." The Puerto Rico Supreme Court recognized that confidential employees do not have a property interest in their jobs and may be removed from office for any reason; provided, however, the action taken is not motivated by politics. In each case the Puerto Rico Supreme Court held the demotion or dismissal of plaintiff because of his political affiliation or political activities to be in violation of the Constitution.
In the claim before us, plaintiff held the seemingly lofty title of GSA Regional Director for the Arecibo region. However, in cases of political discrimination involving Regional Directors for other Commonwealth agencies the Supreme Court of Puerto Rico has consistently found that political affiliation is not an appropriate requirement for the position. Colon, supra, (Regional Managers of Urban Renewal and Housing Corporation ["URHC"]); Ramos Villanueva, supra, (Regional Director for the Commerce Department); Clemente, supra, (Regional Directors of URHC); see also, Rodriguez, supra, (Regional Director Right to Work Administration); Guillermo Rosario Nevarez, Civil No. 85-1117 (Laffitte, Judge) (Regional Director for Rural Housing Administration decided subsequent to the action taken in this case). In the present case little evidence exists which would indicate that plaintiff's position as GSA Regional Director carried greater authority or political control than the positions of URHC Regional Director or the Regional Director of the Commerce Department. The duties and functions of the positions held by the Colon plaintiffs and the plaintiff in Ramos Villanueva are similar to the duties of the plaintiff, here, as outlined by the OP-16 letter. Each Regional Director had responsibility for planning, supervising and implementing agency programs in their regions, they each advised the Agency Director of problems and priorities within the region and they each represented the agency in meetings with other government agencies and with the community. Applying the Branti test, the Supreme Court of Puerto Rico held the duties and functions of the URHC or the Commerce Department Regional Directors were not such that political affiliation was an appropriate requirement for the effective performance of the job.
The facts of the Puerto Rico Supreme Court decisions are closely related to the issue presented by the case before us. The Supreme Court's decisions have clearly established that political affiliation is not an appropriate requirement for the position of Regional Director of a Commonwealth agency. However, even without the guidance of these Supreme Court opinions, or even if defendant had argued that plaintiff's position was distinguishable from the position held by plaintiffs in Colon and Ramos Villanueva, we would find that defendant should have expected plaintiff's demotion, if motivated by politics, to violate the First Amendment. Under the Branti test the defendant has the burden of demonstrating that "party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518, 100 S.Ct. at 1295; see also, *1004 Ramos Villanueva, supra. Defendant has failed to meet this burden.
Branti has been given varying interpretations in the Circuits. See Guillermo Rosario Nevarez, supra, [comparing Jones v. Dodson, 727 F.2d 1329 (4th Cir.1984); Barnes v. Bosley, 745 F.2d 501 (8th Cir. 1984); Ness v. Marshall, 660 F.2d 517 (3rd Cir.1981); Nekolny v. Painter, 653 F.2d 1164 (7th Cir.1981) ]. Whatever the legal interpretation applied, the common thread running through these political discharge cases is the functional approach taken by the courts. The facts of each case are considered in detail. Among the factors taken into account when applying the Branti standard are the factors set out by the Supreme Court in Elrod: whether the employee's responsibilities are vaguely defined or of broad scope indicating a policymaking position, and whether the employee acts as an adviser or formulates plans for the implementation of broad goals. Elrod, 427 U.S. at 367-68, 96 S.Ct. at 2686-87.
Defendant encourages the court to apply the approach to Branti taken by the Seventh Circuit, in particular the case of Tomczak v. City of Chicago, 765 F.2d 633 (7th Cir.1985). Plaintiff in Tomczak was the First Deputy Commissioner of the Water Department for the City of Chicago. The Seventh Circuit held that plaintiff's position was not protected by the First Amendment. Important factors for this decision were the fact that plaintiff worked in the Central Office of the Water Department, directly under the Commissioner. While the Commissioner was absent plaintiff served as Commissioner. Plaintiff received the second highest salary in the department, he was in charge of the department's budget, he was responsible for hiring and firing certain employees and he had important input into Department policy. The court concluded that party association was an appropriate requirement for this job. In the court's view plaintiff had "meaningful input into government decision-making on issues where there is room for principled disagreement" and that plaintiff's position carried sufficient power and authority to "frustrate the administration's policies." Tomczak, supra, at 641-642.
The present case is distinguishable from Tomczak. Plaintiff here had little involvement with the total services provided by GSA. He did not work in or have an office in the central GSA headquarters. He is one of eight Regional Directors. In this position, he was in charge only of administering the maintenance of government buildings in his region. He appears to have had no responsibility for the other services provided by GSA; office equipment and furniture, printing and transportation for the executive.
Plaintiff's job description suggests he had some authority to administer the budget in his region, to let contracts and to recruit some employees. However, the scale of this authority cannot even be compared to the power and influence plaintiff held in Tomczak. There, plaintiff was in charge of the entire budget for the City of Chicago Water Department (a city of more than three million people) and had the authority to hire at certain times for openings throughout the agency. Here, plaintiff had no involvement in writing or implementing the agency budget, his only authority was to direct the budget as allocated by the Central Office to his region. His power to contract was limited to $25,000, and then, only as delegated by the GSA Administrator. The power to hire employees was limited to certain improvement projects.
As Regional Director, plaintiff naturally gave the GSA Administrator input to development of agency plans and policy. However, the OP-16 letter indicates that final GSA policy was established in the Central Office. The Regional Directors' responsibility was to follow the policy set by the Central Office and supervise its implementation in their regions. In conclusion, applying the factors set out in ELROD, plaintiff's job duties were narrowly defined and his input to Agency policy-making was limited to planning for building maintenance in his small region alone.
We find that a reasonably competent government official should have known *1005 that political affiliation was not an appropriate requirement for the position of GSA Regional Director and a demotion for political reasons would violate the First Amendment.
Defendant has presented no evidence that extraordinary circumstances exist and that he did not nor should not have known that his actions were in violation of the Constitution. Therefore, defendant is held to the standard of a reasonably competent official and is presumed to know the law governing his conduct.
We find no reason to address defendant's argument that the Eleventh Amendment bars review of plaintiff's claim. Plaintiff's claim is based on a violation of the U.S. Constitution and a federal statute, not on the basis of state law. The case of Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) is not controlling.
WHEREFORE, defendant's Motion for Summary Judgment is DENIED. There being no reason to impose a stay on discovery or the trial proceedings, set for May 19, 1986, the Motion for a Stay is also DENIED.
IT IS SO ORDERED.
NOTES
[1] In rejecting the subjective element of the qualified immunity test, the Court observed that an inquiry into an officer's state-of-mind was typically considered a disputed issue of fact not appropriate on summary judgment. As a result, "insubstantial" claims proceeded to trial at "a cost not only to the defendant official, but society as a whole." Harlow, 457 U.S. at 814, 102 S.Ct. at 2736.
[2] In support of his defense for a qualified immunity, defendant argues that plaintiff's demotion did not violate the Constitution because "political affiliation" was an appropriate requirement for the effective performance of plaintiff's job. See Discussion, infra. It follows that defendant has admitted, for the purposes of this summary judgment motion, that plaintiff was demoted due to political party affiliation. We accept this fact as true for this motion alone, not for the merits of the case.
[3] The Court cited an election commissioner as an example of a position which is appropriately considered "political" even though it is neither confidential or policymaking. The position of a football coach at a state university was cited as a policymaking position for which politics is not relevant to the job.
[4] 3 L.P.R.A. sect. 1349 states:

Categories of employees
There shall be two categories of employees:
career employees and confidential employees.
3 L.P.R.A. sect. 1350 states:
Confidential employees
Confidential employees are those who intervene or collaborate substantially in the formulation of the public policy, who advise directly or render direct services to the head of the agency, such as: ...
(4) Regional directors of agencies....
Confidential employees shall be of free selection and removal. Likewise confidential shall be those employees who though of free selection may be removed only for good cause by provision of law or those whose appointment is for a term pre-fixed by law.